# Martin v. Butler.

*Action on a Guaranty of a Note.*

1. *Suit upon a guaranty; insufficient plea.*—To an action brought against one who by written indorsement on a note, which was secured by mortgage, guaranteed the payment of the note "on condition that the mortgage securing the same be assigned to me [him] upon my [his] payment of the same if payor defaults," a plea which merely alleges that the plaintiff did not assign or offer to assign "any valid mortgage held by him securing the payment of the note" presents no defense, and is demurrable.

2. *Pleading; when sustaining demurrer error without injury.*—The sustaining of a demurrer to a plea, though erroneous, is error without

[Martin v. Butler.]

injury when the defendant has the benefit of the same defense there-in presented in another plea upon which issue was joined; and such an error does not demand the reversal of the judgment appealed from.

3. *Action upon the guaranty of a note; note admissible in evidence.*— Where an action is brought upon the guaranty indorsed on a promissory note, the confession of the execution of the guaranty, which was self-proving, and which referred to and made the note a part of its stipulations. carries with it the admission of the execution of the note, and both the note and the guaranty are admissible in evidence without further proof of their execution.

4. *Same; evidence of financial condition of maker of the note admissible.*—In an action upon a guaranty indorsed on a promissory note, when issue is joined on the plea of the general issue, the financial condition of the maker of the note at maturity is within the issue formed, and evidence in reference thereto is admissible.

5. *Same; retention of money paid to defendant; evidence thereof admissible.*—In an action brought against one who by written indorsement of a note guaranteed the payment of said note, which was secured by a mortgage on certain land, the greater portion of the purchase money of which the maker of the note and mortgage fraudulently represented he had paid, if it is shown that, while the defendant had in his possession the money which the plaintiff had paid to him in accordance with an agreement on the part of the borrower and maker of the note, the defendant learned of the fraud practiced by the borrower as to his payment of the purchase money of the mortgaged land. it was defendant's duty to restore the money to plaintiff, and his failure to do so rendered him liable to the plaintiff; and evidence tending to show these facts is material, relevant and admissible.

6. *Same; evidence of defendant's activity in the transaction admissible.* In such an action, where issue was joined on defendant's special plea setting up as a defense that he was induced to make the guaranty by representations of plaintiff's agent as to the value of the mortgage given to secure the loan evidenced by the note, evidence tending to show that prior to the loan by plaintiff and the execution of the note guaranteed, defendant was active in endeavoring to procure a loan for the same person from others on the same property mortgaged to plaintiff, is admissible to show that defendant was not induced by representations of the plaintiff's agent as set up in the plea.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

This action was brought by Amos W. Butler against William H. Martin, the appellant. The facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court, of

[Martin v. Butler.]

its own motion, instructed the jury as follows : "If Mr. Irvine and Mr. Martin both believed that this man Williams was the owner of this property, and that he was making a valid security or ample security for the repayment of the money borrowed, but before it was paid out by Martin, he ascertained that this man had no title and had committed a fraud, then it was his duty to hold that money for the benefit of the plaintiff, or to repay to him and give him back the money that he had retained in his hands that he received on the strength of this mortgage ; in other words, if before he had paid out that money which he got on his endorsement of that note, he ascertained it was a fraud on the part of the maker of the note, then if he used the money, if he disbursed it, he thereby made himself liable and became responsible for the money to the plaintiff in the case." The defendant excepted to this portion of the court's general charge, and also separately excepted to the court's refusal to give each of the following charges requested by him : (1.) "The court charges the jury that it is the duty of the plaintiff to reasonably satisfy the jury from the evidence that before the commencement of this suit, he, the plaintiff, assigned or offered to assign to the defendant the note and mortgage mentioned in the pleadings, and if this fact has not been established by the evidence to the reasonable satisfaction of the jury, then they must find for the defendant." (2.) "The court charges the jury that where one offers to give or execute a mortgage for a valuable consideration, the law treats this as an agreement to give a good and valid mortgage, binding on the mortgagor and the property described ; and if the jury believe from the evidence that it was represented to the defendant that the mortgage mentioned in the written guaranty on which this suit was brought, was upon property owned by the said Williams, and that he had paid $1,000 thereon, and only owed the balance of the purchase money, to-wit, about $300, and that on the faith of this representation said defendant made said written guaranty ; and if the jury further believe that said representation was made by said Irvine as agent for plaintiff, or was made by said Williams in the presence of said Irvine as such agent, when it was being sought to get the guarantee of the defendant, but that said representations were not true, then the jury must find for

[Martin v. Butler.]

the defendant." (3.) "If the jury believe from the evidence that Martin was induced to make the indorsement sued on, by the representation that Williams owned property bought from Amy Crenshaw, upon which had been paid the sum of one thousand dollars, and that Williams would execute a mortgage to Butler to secure the payment of the note in question, and that this mortgage would be transferred to him, Martin, if he paid the note; and that these representations were made to Martin either by Irvine or by Williams in Irvine's presence, but that the representations were not true, then they must find for the defendant." (4.) "If the jury believe from the evidence that prior to the date of the note, Irvine knew that the mortgag mentioned in the indorsement of Martin was worthless, and that Williams, the mortgagor, had no title to the property; and that, notwithstanding this knowledge, he kept the same to himself and did not inform Martin of the worthlessness of said mortgage until after the indorsement had been made, and the note with the indorsement thereon surrendered to Irvine as agent for ·Butler, then such concealment on the part of Irvine was a fraud on Martin and would operate to discharge him from any liability by reason of said indorsement, provided that Martin did not otherwise already know of the worthlessness of said mortgage." (5.) "The court charges the jury that under the evidence the plaintiff is not entitled to recover under the fourth and fifth counts of the complaint." (6.) "It was the duty of the plaintiff upon demanding payment of the note from the defendant to offer to surrender and deliver, not only the note, but also the mortgage, duly and properly assigned by the plaintiff to the defendant; and if from all the evidence the jury believe that no such offer to surrender and deliver the mortgage with the note had been made, then they must find for the defendant." (7.) "If the jury believe from the evidence that Martin had any or all the money on hand after the mortgage was given, and after it was ascertained that the title to the property was not in Williams, such money belonged to Williams and not to Butler, and because of that fact plaintiff is not entitled to recover." (8.) "When Martin agreed to indorse on the consideration that the mortgage mentioned be indorsed and transferred to Martin, the law implies

that the parties contemplated a good and valid mortgage.''

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

PILLANS, TORREY & HANAW, for appellant.

S. P. GAILLARD, contra.

HEAD, J.—As is alleged, S. W. Williams and Leillia S. Williams, on June 28, 1892, for money borrowed by the former, executed to appellee, Butler, who was plaintiff below, their promissory note for five hundred and fifty dollars, payable one year after date to said Butler, or order, at the Peoples Bank, Mobile, Ala., with interest from date. The appellant, Martin, defendant below, at the same time, executed, on the back of said note, the following: ''I hereby guarantee the payment of the within note on condition that the mortgage securing the same be assigned to me upon my payment of same if payor defaults.'' (Signed) ''W. H. Martin.'' Butler sued Martin on this guaranty, in six counts, as the case was tried, numbered 2, 3, 6, 7, 8 and 9. The complaint also contains count 4, for $550 due defendant by account, on to-wit, the 28th day of June, 1892; and count 5 for a like sum for money paid, &c., same date. The second count set up the note and the defendant's guaranty thereon, as above copied, and alleged default in the makers; due protest and notice to defendant; due offer of plaintiff to assign the mortgage to defendant upon his payment of the note; his readiness to do so, and defendant's refusal to pay The remaining special counts upon which the case was tried were substantially the same as the second, so far as material. The defendant pleaded the general issue to all the counts mentioned, and filed three special pleas to the six special counts, numbered 2, 3 and 4, respectively. No. 2 simply alleged that plaintiff did not assign or offer to assign ''any valid mortgage held by him securing the payment of the note in said count mentioned.'' The court very properly, for reasons which plainly suggest themselves, sustained a demurrer to this

[Martin v. Butler.]

plea. Plea No. 3 alleged that about the date of the note one L. C. Irvine, as agent of and representing the plaintiff, and while acting for and in behalf of plaintiff, stated to defendant that one S. W. Williams had negotiated a loan from plaintiff of $500, with interest at ten per cent. for one year; that Williams had bought a piece of land in Mobile county, at the price of, and worth, $1,300, and had paid $1,000 of the price, and that Williams was to execute to plaintiff a mortgage on this land to secure the loan when made; that if defendant would guarantee payment of the loan, plaintiff would properly transfer and assign to him the said mortgage, if upon default of payment of the loan by Williams, defendant should be compelled or required to pay the same; and that defendant, relying on said statements, made the guaranty declared on. The plea then avers that Williams had not paid $1,000 of the purchase price of said land, as represented, and did not and could not execute a valid mortgage on the land; and that plaintiff had not assigned, nor offered to assign to defendant any good and valid mortgage on said land, either at law or in equity, subordinate only to the balance of the purchase price. The plaintiff demurred to this plea on sundry grounds which the court sustained, and this ruling is assigned as error; but it is unnecessary to pass upon the assignment for the reason that the fourth plea embodies the substance and effect of every allegation of the third, and issue having been joined on that plea, the defendant had and was accorded the benefit of every defense which could have been made under the third.

The fourth plea sets up more at large the same false representations alleged in the 3d plea, made both by Irvine and Williams, in the presence of each other; and upon it issue was joined.

The plaintiff offered in evidence the note and the guaranty of defendant indorsed thereon, to which objection was made, on the ground that the execution of the note was not proven, nor self-proving. The guaranty was the foundation of the action and self-proving. It refers to, and, essentially, makes the note a part of it. The confession of the execution of the guaranty, therefore, necessarily carried with it admission of the note, as and for what it purports to be.

[Martin v. Butler.]

The financial condition of the makers of the note at maturity, was within the issue made by the pleadings, and evidence of it, at the instance of plaintiff, was admissible.

The plaintiff introduced evidence in support of the allegations of the special counts. The defendant testified substantially to the allegations of his special plea, and further that it was agreed by Irvine, Williams and himself that the $500 to be borrowed of plaintiff should be paid over to him, the defendant, for Williams, out of which he could retain the $300, to take up the 90 days note which, he testified, Irvine and Williams stated to him had been given by Williams to Amy Crenshaw for balance of the purchase price of the land said to have been purchased by Williams. He testified that Irvine and Williams exhibited to him a receipt purporting to have been executed by Amy Crenshaw, the supposed vendor, to Williams for $1,000 of the purchase money. He produced a written agreement signed by Williams, dated June 27th—the day before the guaranteed note to plaintiff was executed—reciting that in consideration of defendant's indorsement of a note for $550 which had been given by Williams, with mortgage attached, for property bought of Amy Crenshaw, $1,000 of which had been paid, and the balance to be paid by defendant out of the proceeds of the timber that Williams was to ship down to Martin, Taylor & Co. (a firm of which defendant was a member), immediately. Out of the $550, the sum of $239 was to be paid as follows: $150 to Williams for getting the timber and hauling it; $50 to Williams to be paid to J. L. Williams; $10 to Barnes for making abstract, and $29 to Barnes to pay taxes due on the property. The balance, $261, to remain with Martin, Taylor & Co. until the timber referred to is brought down and closed up. Out of the sale of the timber an amount sufficient to pay Amy Crenshaw for the balance due by Williams on the property bought by him—taxes and everything due, and the making of titles to the property—should be paid, also $25 to defendant for indorsing the said paper of $550; also $75 to defendant which would be due shortly. Then $200 to remain with defendant to secure payment by Williams of the $550 due in 12 months after date, June 27th, 1892, "is to be paid in full by said Williams." Defendant testified that $500

of the money borrowed of plaintiff was paid to him by
Irvine for Williams; that he paid $213 of it to Williams
for which he produced a receipt given by Williams,
dated June 28th, 1892, stating it was paid "on account
agreement dated June 27th, 1892." A day or two after
the loan on the 28th, it developed that the whole scheme,
on the part of Williams, in reference to the purchase of
property from Amy Crenshaw, was a fraud; that he had
made no such purchase, paid no purchase money, and
that he had forged the receipt purporting to show pay-
ment of $1,000 of purchase money. A long account of
the fraud was published in a Mobile evening newspaper,
on the 30th, which article was read by the defendant on
the day following publication. Amy Crenshaw had
Williams arrested for the forgery about the 30th. Irvine's
testimony tended to show notice of the fraud to de-
fendant on the 30th June or 1st of July. The plaintiff
introduced evidence tending to show that the loan was
negotiated and brought about, and the money paid to
defendant, at his instance and request; that Irvine made
no false representations to defendant, but was assured
by defendant that Williams had bought the Crenshaw
property, and that he would see that it was arranged all
right, and further that he was secured in the shape of a
timber arrangement with Williams. Plaintiff lived in
Indiana, and personally had no part in the negotia-
tions.

Under the common counts, the plaintiff's position was,
that the defendant still had the borrowed money, or the
greater portion of it, which at his instance had been paid
to him, when the fraud, and worthlessness of the mort-
gage became known to him, and that it was his duty to
restore the same to the plaintiff. If the facts hypothesized
be true, there can be no doubt of the correctness of this
proposition. It was competent, therefore, for plaintiff
to introduce evidence tending to show notice of the fraud
to defendant, at a time when he still had in his hands
the borrowed money or any part thereof. Plaintiff could
also introduce evidence tending to corroborate the theory
of other evidence, that defendant executed the guaranty
in reliance upon his asserted timber arrangement with
Williams, and the agreement that the borrowed money
was to be paid to and disposed of and held by him for
his security, and not in reliance upon any false repre-

[Martin v. Butler.]

sentations made by Irvine. He could prove, also, any pertinent facts tending to show that defendant was active in endeavoring to procure a loan for Williams in reference to the supposed Crenshaw purchase. Such facts might be well considered by the jury, in connection with the other evidence, upon the questions whether defendant acted upon his own knowledge and belief, and in his own interest, in executing the guaranty, and not upon representations of Irvine touching the value of the proposed mortgaged security.

As to the interrogation by plaintiff's counsel of the defendant, calling for the details of another transaction had by him with Williams, the question was not answered. The question following, simply asked if he had not had another transaction with Williams. Details were not called for. The witness volunteered to state the details without objection; but defendant subsequently moved to exclude them. The matter related to the timber arrangement, which the plaintiff had a right to investigate. The answer of the witness was, that about March or April, 1892, Williams wanted to borrow some money on a lot of timber, and his recollection was that he paid Williams $75 in cash and accepted a $75 draft drawn by Williams. The court did not err in overruling the motion to exclude. Plaintiff's counsel then asked: "When you accepted that draft, did you or not believe that Williams was all right and straight?" This question was really not answered. It provoked the witness to state that "he never knew anything perfectly straight with a negro until he had settled up." There was no objection to the statement by either party, nor motion to exclude it.

Upon principles already stated, it was not improper for plaintiff to ask defendant whether he did not know that Amy Crenshaw had caused Sam Williams to be arrested on the 29th or 30th of June, 1892. But, again, this question was not answered in any way. The question following, as to the interview with Irvine on June 30th or July 1st, in reference to the publication in the newspaper, was entirely proper; but if it had been improper, the witness answered that he had no such conversation, and no injury could have possibly resulted from the question. The newspaper article itself was properly admitted in evidence, the defendant testifying

[Martin v. Butler.]

that he read it in the paper on July 1st—the day follow-
ing publication—when, it was shown, he stil had in
hand a large part of the borrowed money. Its offer was
expressly limited to the purpose of proving notice to de-
fendant that Williams had been arrested for forgery of
Amy Crenshaw's signature. The objection was to
the article as a whole, and not to any particular part of
it.

Several other questions were asked defendant, and ex-
ceptions reserved thereto, which were either not answered
at all, or answered negatively so as to work no injury to
defendant, if they were conceded to have been improper.
The newspaper article stated that Williams (before ob-
taining the lo .n from plaintiff) endeavored to obtain
money and goods from one Baerman on the Crenshaw
property, and showed him a deed to the property; and
in the effort, exhibited to Baerman a note from Martin,
Taylor & Co., stating that if the property was worth the
amount stated in the deed for which Williams had shown
a receipt for $1,000 from Amy Crenshaw, they would take
it and stand security. Baerman declined to extend the
desired accommodation. The plaintiff read this portion
of the article to the defendant, and asked him if he wrote
the note to Baerman referred to. Objection and excep-
tion reserved to allowance of the question. The purpose
of the question was to show activity by the defendant in
endeavoring to procure a loan for Williams on the Cren-
shaw property, near the time of the negotiations with
plaintiff's agent, and, in connection with the other evi-
dence, was a circumstance to be considered by the jury,
in determining whether defendant was induced to make
the guaranty by the false representations of Irvine. De-
fendant was asked if he had made such an offer, in June,
to Shiffman & Richards, to which he answered, no. He
was then asked if he took any steps to see that any note
that might have been sent to Shiffman & Richards or to
A. Baerman, was forged. If such steps had been taken,
resulting in disclosures to defendant of such forgeries,
the plaintiff had the right to prove the fact, in support
of his case on the common counts, under the principles
we have already declared; and the question objected to,
was a proper preliminary inquiry to that end. The wit-
ness answered, no. If it was supposed the matter, thus
culminating, might induce the jury to think that such

[Martin v. Butler.]

non-action made against the defendant, he should have moved its exclusion, or asked for appropriate instructions in reference to it. Nor do we think there was error in the question to defendant, whether he had notified Baerman that neither he nor the firm had written such a note as was indicated in the publication. He had previously been asked if he wrote the note to Baerman, and answered equivocally, leaving a tendency to show he had. Non-action on his part, after knowing the fact that he had written such a letter was publicly asserted, and in view of the bearing such writing had upon his guaranty of plaintiff's loan, was a circumstance going, in some degree, to corroborate such tendency. The question to defendant as to Irvine's statement, in his presence, during the first three days of July, that it was his, defendant's duty to arrest Williams, and also that this loan had been made not on the mortgage, but on Martin's personal indorsement was objected to, as a whole, as not being pertinent or material. But whether it was proper or improper, the witness answered that no such statement was made ; hence, no possible injury. It was competent for Irvine to testify that he advised defendant, on June 30th or July 1st, 1892, that he ought to have Williams arrested, if he had no titles to the property.

The oral charge to which the exception was reserved, was a very clear enunciation of a principle declared in this opinion, and was free from error.

The first, second, third, fifth and sixth charges requested by the defendant, improperly ignore the common counts, and were properly refused.

Leaving out of view all false representations made, or claimed to have been made, by Irvine to defendant to induce the execution of the guaranty, and assuming there was no fraudulent concealment from defendant of material facts by Irvine, it is very clear that the invalidity or worthlessness of the mortgage given by Williams to the plaintiff affords the defendant no defense. The fourth charge requested by the defendant ignores the question of false representations, and there is no evidence from which the jury could infer a fraudulent concealment by Irvine, from defendant, of the fact that the mortgage was worthless. Moreover, there was no plea setting up fraudulent concealment.

[Gerson & Sons v. Norman.]

The seventh and eighth charges are opposed to what we have said and were properly refused.

Affirmed.